PROVIDENCE STEAM AND GAS PIPE COMPANY, Appellant, *v.* LANSING W. CONNELL, Respondent.

<div style="float:right">

86 319
88 256
86 319
1ap346
86 319
38ap553

</div>

*Foreign corporations — when they can enforce an obligation without obtaining a certificate under chapter 687 of 1892 — liabilities of the directors for a failure to file an annual report — effect of extending the time of payment.*

A foreign corporation carrying on business in the State of New York at the time of the passage of chapter 687 of the Laws of 1892 had the same capacity to sue as had a domestic corporation. It had the right to conduct its business in the ordinary way without the certificate provided for by section 15 of such act up to and including December 31, 1892, and after that date to perform and enforce any lawful contracts previously made; but if, after that date, it desired to do business beyond the performance and enforcement of previous contracts, it must have had such a certificate, and the provision in such section, that contracts made by such corporations when so acting could not be enforced until such certificate was procured, is applicable only where the corporation had been doing business in defiance of the law.

It was not the design of the statute to interfere with the ordinary remedies where the corporation seeking to enforce a contract had the right to carry on its business when the contract sought to be enforced was made.

Where a debt was contracted by a corporation, during the time of its default and failure to file the annual report required by section 30 of chapter 564 of

the Laws of 1890, as amended by section 30 of chapter 688 of the Laws of 1892, the fact that the notes given by such corporation in payment of such obligation, during the continuance of such default, were not due during the continuance of the default or prior to the time that the report of the corporation was subsequently filed, does not relieve the directors of such corporation from personal liability upon such notes. In such case the debt having been contracted during the default was within the statute, although not due, and an extension of the time of payment by the corporation would not discharge the liability of its directors, although it would postpone the remedy, and the obtaining of a judgment therefor against the corporation would not affect the liability of its directors if the debt was not paid by it.

APPEAL by the plaintiff, the Providence Steam and Gas Pipe Company, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Onondaga on the 15th day of November, 1894, upon the decision of the court, rendered after a trial at the Onondaga Circuit before the court without a jury, dismissing the plaintiff's complaint, with notice of an intention to bring up for review all orders made in said action.

In the decision it was held: "1. That the plaintiff, not having made the proof required by section 16 of the General Corporation Law, and not having procured the certificate required by section 15 thereof, cannot maintain this action. 2. That the complaint should be dismissed, with costs."

*H. E. Miller*, for the appellant.

*Charles H. Peck*, for the respondent.

MERWIN, J.:

This action is brought by a creditor of a stock corporation to enforce the liability of a director for failure on the part of the corporation to file an annual report as required by section 30 of the Stock Corporation Law (Chap. 564 of the Laws of 1890, as amended by § 30 of chap. 688 of 1892). The main questions here are, (1) whether the plaintiff itself, being a foreign corporation, has capacity to sue, and (2) whether the debt due the plaintiff is within the provision of the statute making the directors liable "for all the debts of the corporation then existing, and for all contracted before such report shall be made."

The plaintiff, at the time of the transactions in question, was a foreign manufacturing stock corporation, organized several years

before under the laws of the State of Rhode Island. It was doing business within this State, and has not at any time filed in the office of the Secretary of State the proofs required by section 16 of the General Corporation Law (Chap. 563 of 1890, as amended by chap. 687 of 1892), and procured the certificate required by section 15 of that act (Chap. 687 of the Laws of 1892). The Syracuse Bamboo Furniture Company is a manufacturing stock corporation, incorporated on the 19th of August, 1891, under the provisions of the Business Corporation Law (Chap. 567 of 1890), and the defendant is, and has been since its incorporation, one of its directors. Its business was carried on first at Syracuse, and afterwards at Baldwinsville in this State. On the 12th of April, 1892, the plaintiff and the furniture company entered into a contract in writing, by which the plaintiff agreed to supply to the factory of the furniture company at Baldwinsville a system of automatic fire extinguishers for the price of $950, which the company agreed to pay. The plaintiff completed the contract on its part on or about July 14, 1892. On December 9, 1892, the furniture company, for the price stated in the contract, gave to the plaintiff three notes dated that day for $300 each, and payable respectively in one, two and three months from date, with interest, and the balance of the price was paid in cash. The first of these notes was paid at maturity; upon the second there was paid $103.20, and the balance of that and the third note have not been paid. On the 17th of June, 1893, the plaintiff recovered a judgment against the furniture company for the balance due on the notes. It was found by the Special Term that the notes were made and accepted in full payment and settlement of the plaintiff's claim, and that it was so agreed between the parties. The furniture company did not, in January, 1892, file any annual report as required by section 30 of the Stock Corporation Law, and it filed none until January 31, 1893, at which date it filed its report in the office of the clerk of Onondaga county, and on the first of February a duplicate was filed in the office of the Secretary of State. This report was verified by J. C. Kenyon, who deposed that he was the vice-president and treasurer of the company.

Section 15 of the General Corporation Law is as follows: "§ 15. *Certificate of authority of a foreign corporation.*— No foreign stock corporation other than a moneyed corporation shall

do business in this State without having first procured from the
Secretary of State a certificate that it has complied with all the
requirements of law to authorize it to do business in this State, and
that the business of the corporation to be carried on in this State is
such as may be lawfully carried on by a corporation incorporated
under the laws of this State for such or similar business, or, if more
than one kind of business, by two or more corporations so incor-
porated for such kinds of business respectively.   The Secretary of
State shall deliver such certificate to every such corporation so com-
plying with the requirements of law.   No such corporation now
doing business in this State shall do business herein after December
31, 1892, without having procured such certificate from the Secre-
tary of State, but any lawful contract previously made by the cor-
poration may be performed and enforced within the State subse-
quent to such date.   No foreign stock corporation doing business in
this State without such certificate shall maintain any action in this
State upon any contract made by it in this State until it shall have
procured such certificate."

Section 16 states what proof shall be filed with the Secretary of
State before he shall grant the certificate.   These two sections were
not in the law of 1890.   The act of 1892 (Chap. 687) was passed
May 18, 1892, and took effect twenty days after its passage, except
as therein otherwise provided.   So that when the contract was made
between the plaintiff and the furniture company the capacity of
the plaintiff to sue was the same as that of a domestic corporation.
(Code Civ. Proc. § 1779; *Demarest* v. *Flack*, 128 N. Y. 205.)   It
was doing business in the State when the act of 1892 took effect,
and it is expressly provided in section 15 that " no such corporation
now doing business in this State shall do business herein after
December 31, 1892, without having procured such certificate from
the Secretary of State, but any lawful contract previously made by
the corporation may be performed and enforced within the State
subsequent to such date."   This in effect provided that a corpora-
tion in the situation of the plaintiff had a right to go on with its
business in the ordinary way without a certificate up to and includ-
ing December 31, 1892, and, after that date, perform and enforce
any lawful contracts previously made, but that if, after that date, it
desired to do business beyond the performance and enforcement of

previous contracts, it must have a certificate.   The last clause of the section was not intended to change these provisions, but was applicable to cases where corporations were doing business in defiance of the law, and it provided that contracts made by them when so acting could not be enforced until the certificate was procured. (See White on Corp. 21.)

This action of the plaintiff is not, strictly speaking, upon any contract made by it (*Stokes* v. *Stickney*, 96 N. Y. 323; *Carr* v. *Rischer*, 119 id. 117); but, assuming it is in substance an action to enforce its contract with the furniture company, the inhibition in the last clause of the section does not, we think, apply.   The plaintiff had a right to carry on its business when the contract and notes were made, and it was not the design of the statute to interfere with the ordinary remedies in such a case.   We think, therefore, the plaintiff had capacity to sue.

The defendant further claims that he is not liable because the notes that represent the balance of the debt due to plaintiff were not either of them due until after the annual report was filed on January 31, 1893.   The plaintiff says the debt was contracted before and that was enough.

The position of the defendant is based on the idea that the debt for the contract price of the articles supplied by plaintiff, which had been due for some time before the giving of the notes, was satisfied by the notes so that a liability against defendant cannot be predicated on the original debt.   It is not entirely clear that the evidence authorizes a finding that the notes were received in satisfaction of the prior debt (*Carroll* v. *Sweet*, 128 N. Y. 21), but assume that they were, then we have a case of a debt contracted on December 9, 1892, but not due until after January, 1893.   Is the defendant relieved of liability because the debt was not due during the existence of the default in filing the report?

*Jones* v. *Barlow* (62 N. Y. 202) is cited on both sides.   That was an action to enforce the liability of a trustee, under the General Manufacturing Act (Chap. 40 of the Laws of 1848, § 12), by reason of failure to file an annual report in January, 1871.   A report was filed in January, 1872.   (See *Jones* v. *Barlow*, 38 Super. Ct. [6 J. & S.] 143.)   The plaintiff in 1871 sold goods to the corporation for which in December, 1871, the corporation gave its notes on

time.   On the 6th of June, 1872, these notes were taken up and ten new ones given severally maturing the first one month from date and the others successively at intervals of one month.   The action was commenced February 7, 1873, and at that time three of the notes were not due.   The court below sustained a recovery for the full amount of all the notes, but the Court of Appeals held that the recovery must be limited to the amount due when the suit was commenced.   It was not decided that a debt must become or be due during the existence of the default in filing the report in order to be recoverable.   On the contrary, Judge ALLEN, at page 206, says : " It would not be contended by any one that for merchandise sold the corporation, upon an agreed credit, while the trustees are in default for not making the statutory report, an action would lie against the trustees at once and before the expiration of the term of credit.   The law does not vary the contract of the parties or absolve either from its performance or an observance of its terms. In such cases there would a liability, but it would be dormant, and not constitute a cause of action until the debt shall become due."

The case of *Whitney Arms Co.* v. *Barlow* (68 N. Y. 34) does not help the defendant.   That was the case of an executory contract for the delivery of a certain quantity of locks, and it was not shown that, during the existence of the default in filing the report there had been any such performance as created an obligation to pay either presently or in the future.   It seems to have been conceded that if there had been a performance, an indebtedness would have existed within the statute although the corporation had a term of credit for the price.

In *Vernon* v. *Palmer* (16 J. & S. 231) it is said that the true doctrine is that a debt is contracted when, in consideration of value received by the corporation, a payment is to be made, no matter whether at once or at a future period.   (See, also, *Carr* v. *Risher*, 50 Hun, 148.)

We are of the opinion that the debt to plaintiff is within the statute.   It was contracted during the existence of the default, and the fact that the notes of December, 1892, were not due when the report of 1893 was filed, does not relieve the defendant.   The debt was contracted and so within the statute though not due.   All the notes became due long before the present action was commenced.

An extension of time by the corporation would not discharge the defendant though it would postpone the remedy. (*Jones* v. *Barlow, supra.*) The obtaining of a judgment by the plaintiff against the corporation did not affect the defendant's liability as the debt was not paid. (*Deming* v. *Puleston,* 35 Super. Ct. [3 J. & S.] 309, 314; affd. in 55 N. Y. 655.)

These considerations lead to the conclusion that the complaint was improperly dismissed.

HARDIN, P. J., and MARTIN, J., concurred.

Judgment reversed and a new trial ordered, costs to abide the event.