## CREFELD MILLS v. GODDARD et al.

(Circuit Court, S. D. New York. July 12, 1895.)

CORPORATIONS—DOING BUSINESS IN OTHER STATES—NEW YORK STATUTE.

A statute of New York (Laws 1892, c. 687, § 15) provides that "no foreign stock corporation * * * shall do business in this state without having first procured from the secretary of state a certificate that it has complied with all the requirements of law to authorize it to do business in this state. * * * No such corporation now doing business in this state shall do business herein after December 31, 1892, without having procured such certificate; * * * but any lawful contract previously made by the corporation may be performed and enforced within the state subsequent to such date. No foreign stock corporation doing business in this state, without such certificate, shall maintain any action in this state upon any contract made by it in this state until it shall have procured such certificate." *Held,* that the effect of such statute is not to invalidate contracts made in the state by foreign corporations doing business there without a certificate after December 31, 1892, but only to suspend the remedy thereon until such certificate has been procured.

This was an action upon contract by the Crefeld Mills against Warren N. Goddard and Frederick N. Goddard. The jury gave a verdict for the plaintiff, and the defendants moved for a new trial. Denied.

Hornblower, Byrne & Taylor, for plaintiff.

Abraham Gruber, for defendants.

WALLACE, Circuit Judge. Upon this motion for a new trial the defendants principally rely upon a review of the ruling at the trial adverse to their contention in respect to the invalidity of the contract upon which the suit is founded, this defense having been overruled pro forma, in order that it might be deliberately considered upon motion for a new trial in the event of a verdict against the defendants. The complaint alleges a cause of action in behalf of a corporation of the state of Connecticut, for a breach on the part of the defendants of a contract by which the plaintiff was to manufacture, and the defendants were to accept, certain cotton goods at a specified price. Among other defenses set up by the defendants in their answer they allege that the contract cannot be enforced by the plaintiff because of the provisions of chapter 687 of the Laws of New York of 1892 (section 15), which is as follows:

"No foreign stock corporation other than a monied corporation, shall do business in this state without having first procured from the secretary of state a certificate that it has complied with all the requirements of law to authorize it to do business in this state, and that the business of the corporation to be carried on in this state is such as may be lawfully carried on by a corporation incorporated under the laws of this state for such or similar business, or, if

more than one kind of business, by two or more corporations so incorporated for such kinds of business respectively. The secretary of state shall deliver such certificate to every such corporation so complying with the requirements of law. No such corporation now doing business in this state shall do business herein after December 31, 1892, without having procured such certificate from the secretary of state, but any lawful contract previously made by the corporation may be performed and enforced within the state subsequent to such date. No foreign stock corporation doing business in this state without such certificate shall maintain any action in this state upon any contract made by it in this state until it shall have procured such certificate."

It appeared upon the trial that the contract was made in January, 1893, at the city of New York, where the plaintiff maintained a sales room and had a selling agent. It also appeared that the plaintiff did not procure any certificate from the secretary of state, such as was required by the statute referred to, until the 6th day of February, 1895, which was shortly before the commencement of the action.

The object of the statute is to compel foreign corporations to file copies of their charters or acts of incorporation, and a statement of the business which they are carrying on within the state, with the secretary of state, and designate an agent having an office or place of business within the state, upon whom process against the corporation may be served. Statutes having the like object in view are found in many other states of the Union, but the phraseology of these statutes differs so materially from that of the present statute that the decisions of the courts in construction of their provisions are of no material assistance in the present case. The question here is whether the statute intends to prohibit such foreign corporations as are doing business here, without having procured the certificate required by the statute, from making any contracts within this state in the course of that business, or whether its intention merely is to withhold any remedy in favor of such corporations upon such contracts until the certificate shall have been procured. Were it not for the last clause of the section, undoubtedly such contracts would be void, because they would be included in the general prohibition against doing business within the state. But, in view of that clause, such a conclusion is inadmissible without doing violence to the familiar principle of interpretation which requires effect to be given to all parts of a statute, and the several provisions to be harmonized, if possible, so as to allow each to have consistent operation.

It is the manifest purpose of the statute to prescribe a regulation with which all corporations must comply, and to enforce the regulation by attaching consequences in the nature of punishment for delinquency. It excepts from its operation, for a limited period, those corporations which were doing business in this state at the time of its enactment, and which, if not thus excepted, might be compelled to forego their ordinary transactions pending the procuring of a certificate. It was but just that these corporations, which had acquired a business domicile here, with the implied sanction of the state, and had adjusted their business arrangements accordingly, should be allotted a reasonable time in which to comply with the

regulation, without being in the meantime disabled or subjected to risk of loss. But this was no reason why they should be treated more leniently than other corporations if they should reject the privilege accorded to them. It was equitable and proper that there should be a temporary discrimination in their favor, but no conceivable reason can be suggested entitling them to a permanent favoritism. It was just as desirable in the interests of the public that they should comply with the regulation prescribed as that other corporations should do so. When the several clauses of the statute are read together, they naturally suggest these considerations. Upon first impression, and upon analysis, the reasonable meaning of the statute would seem to be not to vitiate illegal contracts made in this state by foreign corporations doing business here without having procured a certificate, but to suspend as to such corporations any remedy upon their contracts during their delinquency. Unless this is its meaning, the last clause of the statute can have no practical operation. Plainly, this clause does not apply to contracts made prior to December 31, 1892, by corporations doing business in the state at the date of the passage of the act, because it is inconsistent with the preceding clause, which distinctly permits such contracts, not only to be performed, but also to be enforced within the state subsequent to that date. Consequently, the last clause must be meant to apply to all contracts made by corporations doing business in disregard of the regulation. Thus applied, unless it is intended to qualify the general provision of the first clause which creates the disability to contract, and to mitigate the consequences of disobedience, it is meaningless. It cannot be believed that, if the legislature had intended to prohibit the making of contracts by foreign corporations during delinquency, any provision would have been inserted impliedly authorizing suits upon such contracts in the event of a subsequent compliance with the regulation. In many cases the delay to which a delinquent corporation would be subjected while endeavoring to secure a certificate might be injurious, and perhaps fatal, to its remedy upon a contract; and, doubtless, the legislature was of the opinion that the suspension of the remedy during the interim would furnish a sufficient incentive to coerce a compliance with the law.

The conclusion thus reached accords with the view of the statute adopted by the general term of the supreme court in Gas Pipe Co. v. Connell, 33 N. Y. Supp. 482. There is nothing in the case of Neuchatel Asphalte Co. v. Mayor, etc., 12 Misc. Rep. 27, 33 N. Y. Supp. 64, reversing the decision in 30 N. Y. Supp. 252, inconsistent with this conclusion.

It has also been urged for the defendants in behalf of their motion for a new trial that evidence offered by them was erroneously excluded, which, if admitted, would have tended to show that delivery orders for the goods were given to the plaintiff by the defendants within a reasonable time. There was no dispute upon the trial that defendants had not given orders for the undelivered part of the goods upon which the claim for damages was based. The defendants refused to accept these goods, placing their refusal upon the breach of cer-

tain conditions of the contract on the part of the plaintiff. The jury were instructed that, if there had been such a breach on the part of the plaintiff, the defendants were entitled to a verdict. The evidence excluded·had no bearing whatever upon the issues which were finally submitted to the jury.

The motion for a new trial is denied.