## CHICAGO MILL & LUMBER COMPANY, Respondent, v. THOMAS E. SIMS, Appellant.

### St. Louis Court of Appeals, April 14, 1903.

1. **Foreign Corporation: STATUTORY REQUIREMENT: SUIT FOR BREACH OF WARRANTY.** By Revised Statutes 1899, sections 1024 and 1026, foreign corporations desiring to do business in this State are required, under pecuniary penalty, to perform the conditions therein prescribed, and on failing to do so will not be permitted to maintain any suit in law or equity in any of the courts of this State for the enforcement of their rights. Plaintiff brought this suit for breach of warranty, after it had qualified under the statute to do business, but the conveyance out of which the suit grew, was made before plaintiff had any legal right to do business in the State. *Held,* that plaintiff could maintain this suit, and that the statute was intended to withhold the remedy rather than destroy the right or cause of action.

2. ———: **PURPOSE OF THE STATUTE: REASONABLE CONSTRUCTION SHOULD BE GIVEN.** The object of the statute in question is to require foreign corporations to do business in this State on the same footing that domestic corporations occupy, with no exceptional advantages; hence, the statute should not be enlarged by construction so as to effect a forfeiture of the right to begin an action.

Appeal from Pemiscot Circuit Court.—*Hon. H. C. Riley,* Judge.

AFFIRMED AND TRANSFERRED TO SUPREME COURT.

*Roberts & Corbett* and *Brewer & Collins* for appellant.

(1) The contract sued on is void. R. S. 1899, sec. 1030; Downing v. Ringer, 7 Mo. 585. (2) And after compliance by filing a certificate of incorporation, etc., can not relate back and validate the contract sued on. Blevins v. Fairly, 71 Mo. App. 259; Lumber Company v. Thomas, 92 Tenn. 587. (3) In the case of Carson-Rand Co. v. Stern, 129 Mo. 381, the question of the validity of the notes and accounts sued on was not raised. In this case, the defendant did not plead to the merits, but merely filed a motion to dismiss for want of capacity to sue. The question whether the notes and accounts were valid or not was not raised by the pleadings and determined by the Supreme Court. This case is explained by Judge ELLISON in the opinion in Ehrhardt v. Robertson Bros., 78 Mo. App. 404.

*Faris & Oliver* for respondent.

(1) A statute which provides that if a foreign corporation transact business in a State without having complied with the requirements of the law, it shall incur a penalty, does not render void contracts made by it without having so complied. Under a statute imposing a penalty for non-compliance, a foreign corporation is not prohibited from doing business, and its contracts are not void. Ins. Co. v. Walsh, 18 Mo. 229; Clarke v. Ins. Co., 19 Mo. 53; Ins. Co. v. Overholt, 4 Dill. 287; Railroad v. Evans, 31 U. S. App. 432; Dearborn Foundry Co. v. Augustine, 5 Wash. 67; Edison Electric Co. v. Navigation Co., 8 Wash. 370; Toledo Tie Co. v. Thomas, 33 W. Va. 566; Ins. Co. v. Rogers, 47 Pac. 848; Jarvis-Conklin Mfg. Co. v. Wilhoit, 84 Fed. 514. (2) Section 1026, Revised Statutes 1899, provides two penalties only for failure to comply with the act concerning foreign corporations. A statute prohibiting foreign corporations from transacting business in this State until com-

pliance with the law relating to foreign corporations will not bar an action; it may temporarily abate it till compliance be had.   Bank v. Travers, 7 Fed. 146; Utley v. Clark Mining Co., 4 Colo. 369; Kindel v. Beck & Co., 19 Colo. 310; Singer Mfg. Co. v. Effinger, 79 Ind. 264; Oreilly & Co. v. Green, 40 N. Y. 360; Peck Mfg. Co. v. Groves, 6 S. D. 504; Crefeld Mills v. Goddard, 69 Fed. 141; Carson-Rand Co. v. Stern, 129 Mo. 381. (3)   If a foreign corporation, having made a contract without previously complying with the provisions and requirements of the law relating to such corporations, afterwards comply even pending a suit by it, it has capacity to sue and may maintain its action.   Carson-Rand Co. v. Stern, 129 Mo. 381; Fire Ins. Co. v. Pursell, 92 Mass. 231; Huttig Mfg. Co. v. Hotel Co., 6 Wash. 122; Goddard v. Crefeld Mills, 21 C. C. A. 530; Caesar v. Copell, 83 Tenn. 403; Simplex Dairy Co. v. Cole, 86 Fed. 739; Eastern B. & L. Assn. v. Bedford, 88 Fed. 7; Loan Association v. Elbert, 153 Ind. 198. (4)   The case of Ehrhardt v. Robertson is not in conflict with the case of Carson-Rand Co. for the reason that in the Ehrhardt case there was no after-compliance or attempt to comply with the law.   And the court expressly refrains in the latter case from expressing an opinion as to what its holding would have been had there been any after-compliance.   This is also true of the case of Blevins v. Fairly, 71 Mo. App. 259, and of all other cases in which the Courts of Appeals have held there was no right to sue.   Ehrhardt v. Robertson, 78 Mo. App. 404.

GOODE, J.—Respondent is a foreign corporation organized under the laws of the State of Illinois.   It instituted this action on a covenant contained in a deed executed by appellant Sims, November 29, 1898, which was intended to convey the growing timber on a tract of land in Pemiscot county, Missouri, and allow respon-

dent to cut and remove the timber within three years from its date.

The covenant on which the action is founded reads as follows:

"I warrant said timber and trees to be free and clear from any incumbrance done or suffered by me, or those under whom I claim, and I will warrant and defend the title to the said timber and trees to the said Chicago Mill and Lumber Company, or their assigns, against the lawful claim and demands of all persons whomsoever."

A month after the execution of that deed, which was neither acknowledged nor recorded, the appellant made a quitclaim deed to E. A. M. and Joseph Webb, conveying the land on which the timber stood. The second deed did not except the timber which had been previously sold to appellant from its force and effect; so after the Webbs had made the purchase they put the deed on record and began to cut the timber. This led to an injunction suit by the respondent to protect its rights acquired by purchase from Sims, which suit is alleged in the petition to have resulted in a judgment that the title to the timber was in the Webbs.

The petition in the present case states that appellant Sims was duly notified to defend respondents title to the trees according to his covenant. Two counts are contained in the petition, but we are only concerned with the first one, for the judgment on the second count was for the appellant.

The only defense set up in the answer to the first count is that the respondent was a foreign corporation resident in this State and doing business therein at the time it took the deed from the appellant; but that it had not previously filed in the office of the Secretary of State a copy of its charter or certificate of incorporation and has not made a sworn statement of the proportion of its capital stock represented by property located in Missouri, or paid its incorporation fees. In other words,

that the respondent was a foreign corporation doing business in this State without having complied with the requirements of section 1024 et seq. of the Revised Statutes of 1899.

It is stated in the respondent's brief that its business was manufacturing boxes, that all its factories were in the State of Illinois, and that the only business it conducted in this State was buying timber and other raw material to ship to Illinois to be made into boxes; but that statement is broader than the testimony in the record warrants.

S. C. Humphreys, the Missouri agent of the respondent company, testified that it bought lumber from sawmill people in this State and shipped it to Illinois, and at the end of the month *it was in Cairo in boxes.* There is no testimony as to where the respondent's factories were, whether it had any, whether it worked up the lumber it bought or shipped it to Illinois and sold it. For about ten months previous to the date of the deed in question, it kept a resident agent in this State to make purchases of timber, who had an office at Carruthersville. The only business transaction the company is shown to have had prior to the date of the deed, except purchases of timber, was the acquisition of one other tract of land.

The evidence shows that the plaintiff did not comply with the statutes in relation to foreign corporations until September 17, 1900, or about a month before this action was begun; also that a prior action to obtain the same relief was instituted June 16, 1900, and dismissed when the company's attorney found it had not yet filed its certificate of incorporation with the Secretary of State.

The only declaration of law asked was one by the appellant that, under the pleadings and the proof, the finding should be in its favor. The court refused that declaration, gave judgment for the respondent, and this appeal was taken.

It will be seen from the statement that the respondent company had not complied with the law in relation to foreign corporations when Sims bound himself by the covenant on which this action is based, but had complied with it before the action was begun. The principal question, therefore, is: Did that compliance entitle the respondent to maintain its action? This involves the further question of whether the deed was a void instrument from the first because the respondent was in default in respect to its statutory duties.

We might have a doubt as to whether the respondent company was transacting business in this State within the meaning of the law, if the evidence warranted the statement contained in its brief that it was engaged in manufacturing in the State of Illinois and only bought timber in Missouri to use in its factories. But, as we have said, there is no testimony that its Illinois business was of that character, as it is only shown to be an Illinois corporation which bought timber and lumber in Missouri and shipped it into Illinois. As the proof stands, we must hold that it was engaged in business in the State of Missouri within the meaning of the law prescribing conditions on which foreign corporations may transact business in this State. That being true, the present action can not be maintained if the deed from Sims to the company was void, but can be maintained if it was a valid instrument on which no action would lie in the State courts as long as the respondent remained in default. We have to inquire, then, whether the statutes relating to foreign corporations render contracts entered into by them before they have complied with the statutory requirements void, or merely suspend their right of action on such contracts.

We would feel sure the statutes only affect the right to enforce the contract instead of invalidating the contract itself, but for the fact that the opposite construction has been adopted heretofore by this court and

also by the Kansas City Court of Appeals. Williams v. Scullin, 59 Mo. App. 30; Blevins v. Fairly, 71 Mo. App. 259; Ehrhardt v. Robertson, 78 Mo. App. 404. In those cases it was decided that the statutes prevent foreign corporations, which have failed to comply with their requirements, from making agreements, and that all agreements attempted in such circumstances are void so far as the rights of the corporations are concerned. This conclusion was deduced from the proviso that before a foreign corporation, organized for pecuniary benefit, shall be permitted to transact and continue business in this State, it shall observe the prescribed regulations. That language was thought to so effectually prohibit non-complying companies from transacting any business whatever as to deprive all their agreements of validity, instead of simply denying the companies the remedies afforded by our courts for the redress of wrongs.

The question came up for decision in the case of Carson-Rand Co. v. Stern, 129 Mo. 381, and, as we understand the opinion, was determined the other way; but the Kansas City Court of Appeals in Ehrhardt v. Robertson, supra, treated that case as not conclusive of the matter. It was an action on an account for merchandise, and at the return term the defendant appeared and filed a motion to dismiss it because the Carson-Rand Company was a foreign corporation and had omitted to comply with the statutes. The motion was sustained by the circuit court and an appeal was taken to the Supreme Court, which reversed the judgment because it appeared the company had fully complied with the law after the action was begun but before the motion was filed. The point at issue was, whether in view of that fact, plaintiff could maintain its suit to recover for the merchandise sold, and the decision was that the action could be maintained.

That decision is exactly in point in the present case, and it settled the law according to the respondent's con-

tention on a less favorable showing in favor of a foreign corporation's right than we have here; for in that instance the plaintiff company did not comply with the law until after its suit was in progress, whereas the respondent complied before it sued. The Supreme Court did not dispose of the matter on a technicality, but construed the statutes and gave judgment with reference to the paramount object the Legislature had in view, which was not to exclude foreign corporations from Missouri, but to compel compliance with regulations designed to place them on a footing of equality with domestic companies. "The object of the law," the court said, "was rather to induce observance of those conditions than to deprive a foreign corporation of a right of action or other property." The comment was also made that the statutes must have a fair and reasonable reading and not be enlarged beyond their natural meaning to accomplish the forfeiture of a right of action. The opinion goes so far as to say that the law does not prohibit the institution of an action by a company in default, but only its maintenance; and that an action begun before compliance with the law may be maintained if there is a subsequent compliance. Why a party should be entitled to begin an action on a void contract, we are unable to see. A void undertaking affords no basis for the institution of an action or the recovery of a judgment. Neither do we see why the Supreme Court should remand a case of that kind with the ruling that the plaintiff might maintain the action, if the obligation to be enforced was void. That case, like this one, rested on a contract and undoubtedly must have been deemed to rest on a valid instead of a void contract, or no decision would have been given that the action could be maintained.

Apart from the binding authority of the decision, we are impressed by its sound reasoning and its just results. There is some disagreement among the cases construing statutes like ours as to their effect on obli-

gations, but we think the weight of authority and argument is that they go to the remedy and not to the right. Courts which hold the contracts of companies in default to be void, rely on the proposition that a contract which is prohibited, or made unlawful by a statute, is void; and unquestionably, if the contract is prohibited expressly or by necessary implication, it is void. But it does not follow that every agreement which the law pronounces unenforcible is void. The whole matter is one of legislative intention to be gathered from the language of the particular statute, considered with regard to the object for which it was enacted. The object of the statute in question is to require foreign corporations to do business in this State on the same footing domestic ones occupy, and with no exceptional advantages. The regulations prescribed to attain this object. are that they shall have an office where they may be served with legal process and brought within the jurisdiction of the State Courts, pay a proper proportion of dues on their capital stock into the State treasury and be otherwise subject to the liabilities, restrictions and duties imposed on corporations of like character organized under State laws. To enforce these requirements, a fine for the violation of the law is provided and prosecutions authorized; and as a further means of enforcement, a disobedient company is precluded from maintaining an action in the courts of the State on any demand arising out of contract or tort. But the law nowhere says, nor, as we think, intimates, that its contracts shall be void or that torts may be committed against it at pleasure. We do not understand that if wanton destruction of a company's property is committed while it is in default, it will have no remedy for the tort if it thereafter complies with the law; for instance, if a foreign corporation owns timber land and a trespasser cuts off ten thousand dollars' worth of timber, that the corporation can not recover damages though it fully obeys

the law before suing.  The decided cases which we have read show that when foreign corporations have begun suits without compliance, it was due in every instance, we believe, to an oversight instead of a disposition to defy the authority of the State.  The Legislature hardly intended to punish such an oversight or inadvertence by a total forfeiture of contract obligations, perhaps involving great interests, so that subsequent obedience could give the delinquent company no standing in the courts.  Such an interpretation is harsh and unreasonable and ought not to be adopted when the words and object of the statute repel rather than invite it.

Passing now to the decisions on similar statutes in other jurisdictions, we find many courts have taken the view we do.  In fact every outside case we have read, except Lumber Co. v. Thomas, 92 Tenn. 587 (which has been criticised), approves the proposition that a compliance with the law subsequent to the date of a contract gives the company a right of action; and this, too, when the law contains the provision that a non-complying corporation can not maintain an action.  Dearman Foundry Co. v. Augustine, 5 Wash. 57; Huttig Mfg. Co. v. Hotel Co., 6 Wash. 122; Goddard v. Crefeld Mills, 21 C. C. A. 530, 69 Fed. 141; Simplex Dairy Co. v. Cole, 86 Fed. 739; Eastern B. & L. Assn. v. Bedford, 88 Fed. 7; Gas Pipe Co. v. Connell, 33 N. Y. Supp. 482; Toledo Tie Co. v. Thomas, 33 W. Va. 566; Wood Mowing Co. v. Colwell, 54 Ind. 270; Singer Co. v. Brown, 64 Ind. 548; Daly v. Ins. Co., 64 Ind. 1.  Most of those decisions are thought to be precisely in point, as construing statutes in no material respect different from our own.

The following are less apposite, but announce the proposition that contracts made without compliance with kindred statutes are not void.  Insurance Co. v. Rigers, 47 Pac. 848; Jarvis-Conklin v. Wilhoit, 48 Fed. 514; Utterly v. Mining Co., 4 Colo. 369; Kindell v. Beck, 19 Colo. 310; Pech. Mfg. Co. v. Groves, 6 S. Dak. 504;

Insurance Co. v. Overholt, 4 Dill 287; Fritz v. Palmer, 132 U. S. 282; American Loan Co. v. Railroad, 37 Fed. 242; Rogers, etc., Co. v. Simmons, 155 Mass. 259; see also many other cases which may be found cited in 5 Thompson, Private Corporations, notes to section 757 et seq.

Some of those decisions lay stress on the fact that agreements made by non-complying companies possess no moral turpitude and that the purpose of the statute is realized by obedience after the contract is made; others on the ground that the penalty imposed for a violation of the law and the suspension of the right to sue constitute a sufficient sanction, and still others on the ground that contracts of an innocent character ought never to be held void because of a statute, unless the intention to make them void is clear.

Courts which take the extreme view of the question, use the argument that such statutes are not primarily revenue measures, but regulations to protect citizens of the State, and that, therefore, contracts made in disregard of them ought to be treated as nullities. The premises of that argument may be granted and the conclusion denied. Such laws are intended to protect the citizens of a State from unequal competition, but it does not follow that they can be made efficacious only by an extinction of obligations for which a consideration has passed. The denial of legal remedies and the imposition of fines ought to be enough to insure obedience, and experience has shown is enough. Outlawing companies in default and allowing persons who are parties to agreements with them to violate their agreements at pleasure, is likely to do the State more harm and produce more demoralization than will result from a moderate interpretation of the statutes, sufficient to attain the end desired without encouraging repudiation or destroying valuable rights.

In support of the opinion that these statutes avoid the contracts of companies in default, the rule declared

in Downing v. Ringer, 7 Mo. 585, is invoked; namely, that every contract about a matter made unlawful by statute, is void whether the prohibited thing be merely unlawful or wrong in itself. But it is entirely consistent with that rule to hold that a statute prescribing conditions on which an act may be lawfully done, punishes a violator by forfeiting his rights so long as he remains obstinate, but not irrevocably, if the language of the statute warrants such an interpretation. We think those words of the statute in question, which prohibit a delinquent company from maintaining an action, show the intention was to suspend the remedy and not to destroy the right; for it was easy to use words of avoidance if that result had been desired; and such was the argument in Goddard v. Crefeld, supra, which has an excellent opinion on the subject.

As we are unable to distinguish this case from Carson-Rand Co. v. Stern, we must be governed by it as a controlling authority.

Appellant now contends that there was no breach of the covenant contained in the deed; but as no such defense was interposed by the answer, and as the respondent had to support with proof, only the issues made by the pleadings, we shall disregard this assignment of error.

The judgment is affirmed. *Bland, P. J.,* and *Reyburn, J.,* concur.

### MEMORANDUM.

April 28th, motion for rehearing overruled. Judge BLAND is of the opinion that the decision is in conflict with the decision of the Kansas City Court of Appeals in the case of Ehrhardt v. Robertson Bros., 78 Mo. App. 404, and asks that the cause be certified to the Supreme Court for final decision. It is so ordered.