JOHN W. WULFING, Appellant, v. ARMSTRONG CORK COMPANY.

Division One, May 31, 1913.

1. FOREIGN CORPORATION: Right to Do Business: Lease of Offices Before Compliance With Law. A lease to a foreign corporation of the real estate upon which it has its office is not void because made before the corporation had, by compliance with Secs. 1024-1026, R. S. 1899, acquired the right to do business in this State.

2. ———: ———: ———: Ratification. And even though the
foreign corporation may have been occupying the premises and
transacting its business in this State without compliance with
the law, before and at the time the lease was made, yet having,
after its compliance with the law and the issue of its certificate,
continued to hold under the same lease, the lessor, by receiving
the benefits accruing under it upon the theory of its validity,
for five years, will be held, by his ratification, to have supplied
the only element necessary to its completion, at a time when
respondent was competent to take under it. [WOODSON, P. J.,
dissenting as to the ability to ratify such a contract.]

Appeal from St. Louis City Circuit Court.—*Hon.
William M. Kinsey*, Judge.

AFFIRMED.

*W. Scott Hancock* and *W. Hall Trigg* for appellant.

Contracts made in this State by an unlicensed for-
eign corporation, doing business here, are illegal and
void. Amusement Co. v. Amusement Co., 192 Mo. 404;
Mill & Lumber Co. v. Sims, 197 Mo. 507; Roeder v.
Robertson, 202 Mo. 522; Machinery Co. v. Ramlose, 210
Mo. 631, 231 Mo. 508; Zinc & Lead Co. v.
Mining Co., 221 Mo. 7. *A fortiori*, such contracts
are nullities where they are to be performed
in this State, and have for their subject-matter
realty situate here. Zinc & Lead Co. v. Mining
Co., 221 Mo. 7. It is not the inhibition of the statute
against such corporations maintaining suits in the
courts of this State, but the unlawfulness of transact-
ing their corporate business here, which strikes at the
essential validity of their contracts, and affects them
with nullity. Therefore, the question is not one of
remedy, but of right. The infirmity being one going
deeper than the remedy, and fixing itself upon the con-
tract itself, the position of the parties thereto before
the court, either as plaintiff or defendant, or whether
the statute be used as a defense, or as a ground for
affirmative relief, are alike unimportant. Baptist
Church v. Baptist Church, 73 N. Y. 82; Parkersburg v.

Brown, 106 U. S. 487; King v. Wilson, 95 N. W. (Neb.) 494; Toby v. Schultz, 51 Ill. App. 487; White v. Bank, 22 Pick. (Mass.) 181; Pinckston v. Brown, 3 Jones Eq. (N. C.) 494; Gorringe v. Reed, 23 Utah, 121. Subsequent procurement of license, authorizing such a corporation to transact business in this State, has no *ex post facto operation.* It speaks for the future, not the past. Amusement Co. v. Amusement Co., 192 Mo. 404; Zinc & Lead Co. v. Mining Co., 221 Mo. 7; Mill & Lumber Co. v. Sims, 197 Mo. 507; Blevins v. Fairley, 71 Mo. App. 259; B. & L. Assn. v. Denson, 189 U. S. 408. Leases made by unlicensed foreign corporations, doing business in this State, pass no estate or interest, and confer no rights in the subject-matter thereof. Zinc & Lead Co. v. Mining Co., 221 Mo. 7; Machinery Co. v. Ramlose, 210 Mo. 631, 231 Mo. 508; Roeder v. Robertson, 202 Mo. 522. A lease, in order to create a tenancy other than from month to month, must be executed both by the lessor and the lessee. R. S. 1909, sec. 7883; Valle v. Kramer, 4 Mo. App. 570; Combs v. Transfer Co., 58 Mo. App. 112. No such unlicensed foreign corporation, doing business in this State, has any local existence. It is not recognized here as an entity. Accordingly in the lease in question there was no lessee. Rowden v. Daniell, 151 Mo. App. 15; Ehrhardt v. Robertson, 78 Mo. App. 404. Furthermore, the lease itself being a nullity, the defendant's possession is that of a trespasser. Berni v. Boyer, 90 Minn. 469.

*Joseph H. Zumbalen* and *Henry T. Ferriss* for respondent.

A subsequent purchaser of real estate cannot invoke the aid of the statute prohibiting unlicensed foreign corporations from doing business in this State, to defeat an outstanding lease on the premises, made by his grantor to such an unlicensed corporation. In ejectment by such purchaser against the corporation, it can assert its rights under the lease. Blodgett v.

Zinc Co., 58 C. C. A. 79; Tel Co. v. Superior Court, 153 Cal. 533; Lumber Co. v. Lesh & M. L. Co., 144 Wis. 362. In ejectment against a foreign corporation it may assert a lease under which it is holding, made to it before it obtained a license to do business in this State. Such a lease, being an executed conveyance or grant, is not assailable on the ground that the lessee was an unlicensed foreign corporation when it was made. Diefenbach v. Vaughan, 116 Ala. 150; Kindred v. Mortgage Sec. Co., 116 Ala. 192; Light Co. v. Rust, 117 Ala. 680; Rachels v. Cooperage Works, 128 S. W. (Ark.) 348; Heiskell v. Lodge, 87 Tenn. 668; 19 Cyc. 1303; Manufacturing Co. v. Construction Co., 124 Mo. App. 349. The lease having been fully executed by the lessee's entry into possession, vested an estate in the land in the lessee, for the term of the lease, although it had not complied with the statute concerning foreign corporations doing business in the State, which estate could only be defeated by the State in a direct proceeding. 19 Cyc. 308, 1240; Fritts v. Palmer, 132 U. S. 282; Seymour v. Gold Mines, 153 U. S. 523; Chattanooga Co. v. Evans, 14 C. C. A. 116; Reed v. Todd 127 N. W. (S. D.) 527; War Eagle Co. v. Dickie, 14 Idaho, 534; Miller v. Williams, 27 Colo. 34; Carlow v. Aultmann, 28 Neb. 672; Loan & Trust Co. v. Gordon, 113 Iowa, 481; Rogers v. Nashville Co., 33 C. C. A. 534; Rothchild v. Memphis Co., 51 C. C. A. 310. The foreign corporation statute affects merely the capacity of the corporation to contract; and after the transfer of an interest in land to the corporation has reached completion, the transaction cannot be questioned collaterally by a private suitor. The same rule applies as in the case of a purchase of land by an alien. Ins. Co. v. Smith, 117 Mo. 289; Property Co. v. Nashville, 114 Tenn. 213; Pembroke v. Huston, 180 Mo. 627. The acceptance of rent by the lessor under the lease, for more than five years after the corporation procured a license to do business in this State, was a ratification thereof which estops him and his

grantee from now questioning its validity. Applebaum v. Galewski, 34 N. Y. Misc. 281; Earl v. Steffens, 1 N. J. L. 53; Hassard v. Tomkins, 108 Wis. 186. The statute is directed against carrying on of its charter business by a foreign corporation, until it has complied with its terms. The acquisition of real property or an interest therein, is not within the prohibition, unless that be the charter business of the corporation. 19 Cyc. 1303; Property Co. v. Nashville, 114 Tenn. 213. Appellant cannot repudiate the lease, even if it be void, without first returning or offering to return the rents received under it. Roeder v. Robertson, 202 Mo. 522; Tarr v. Western L. & S. Co., 15 Idaho, 741; Hanchey v. B. & L. Assn., 140 Ala. 245.

BROWN, C.—This is ejectment for the property and building in the city of St. Louis known as numbers ten and eleven North Second street, which was, up to the sixth day of May, 1907, owned by Lavinia S. Shallcross and others. At the date last named it was purchased by the plaintiff at a partition sale made by one Charles F. A. Mueller, a special commissioner appointed by the St. Louis Circuit Court for that purpose in a suit pending between the owners.

The defendant is a Pennsylvania corporation and has been engaged in business in the city of St. Louis since 1895, and from November, 1896, up to the time of the trial it maintained an office and place of business in the premises in controversy, where it carried on the business of buying and selling corks and other brewery supplies; and it had a warehouse in St. Louis from which to make its deliveries. During all that time Mr. Sidney L. Gilbert has been its business manager in that city. Its principal office was in Pittsburg, Pennsylvania. Up to January 13, 1902, it had not complied with the laws of the State of Missouri entitling it to a license to do business in the State, but on that date

having complied with those laws its license issued and was delivered by the Secretary of State.

By a lease dated October 10, 1901, the owners of the premises, parties to the partition suit, by Wyatt Shallcross, their trustee, leased the premises to the defendant for use as a store and cork factory for a term of ten years from and after the first day of January, 1902, "at an annual rental of fifteen hundred dollars payable monthly in installments of one hundred and twenty-five dollars each." At the trial, which occurred at the February term, 1908, Mr. Mueller, the commissioner, testified that prior to the sale of the property by him the plaintiff asked him to ascertain for him the nature of the tenancies of the parties in possession of the property, which included other buildings than those in controversy, and on October 8, 1907, he went to defendant's office and in a conversation with Mr. Gilbert, its manager, was told by the latter that defendant had no lease on the premises in question; that the lease it had had expired, and that he supposed they would have to vacate; that thereafter, and before the sale, he saw the plaintiff and communicated to him the statements of Mr. Gilbert. Mr. Gilbert testified that prior to the sale Mr. Mueller came to his office asking permission to place a sign in front of the building, and stating that the property was to be sold; that the witness thereupon, in Mr. Mueller's presence, turned to his bookkeeper saying: "Mr. Sharing, they tell me they are going to sell the building, and I am under the impression they have got us short here;" that the two talked the matter over in the hearing of Mr. Mueller and were uncertain as to whether or not their lease on the property had expired, or was still in force; that during the conversation it was stated that the lease was in Pittsburg, and the witness said that, as he was going to Pittsburg within a week or two to attend a director's meeting he would then find out how matters stood; that Mueller asked nothing concerning the terms

of defendant's tenancy or the duration of its lease; that he said nothing to Mueller to the effect that the tenancy of the defendant was from month to month.

Mr. Shallcross testified that before the sale Mr. Mueller had asked him to bring the leases covering the several properties in the sale, so that they might be referred to in case any questions were asked about them; that he then knew that defendant's lease had not expired, and, while unable to state positively, he thinks he so informed Mr. Mueller. He had at the sale memoranda showing the terms of all the leases.

The plaintiff testified that he had been in business on Second street for twenty-five years and that he had known for a number of years that the defendant was in possession of the property.

The court excluded the statement of plaintiff that on the 24th or 25th of October, 1907, Mr. Mueller had reported to him that defendant's agent had told him there were no leases on the property in controversy. The appellant's abstract of the record shows that this action was excepted to, but the defendant filed a supplemental abstract showing that this was not the case and nothing further was done.

The defendant's lease was not recorded until after the plaintiff purchased and paid for the land.

The appellant makes no complaint either in his assignment of errors or brief that the question of notice to plaintiff of the defendant's lease was not properly submitted to the jury upon unexceptionable instructions. While he assigns error on the action of the court in excluding testimony, it has not, as we have seen, been properly saved in the record, and even were it material error, which is doubtful, it is not before us for consideration. The only question presented is whether or not the lease is void and inoperative because the defendant had not, on or before the first day of January, 1902, the date upon which, by its terms, it was to take effect, by compliance with the statutes in that respect

acquired the right to do business in this State. This
point is urged with great force and learning by the ap-
pellant's counsel. These statutes have frequently been
before the court for consideration and interpretation,
from the point of view involved in each particular case,
but as new questions are presented it seems necessary
to examine them in the new light so suggested. In do-
ing so we shall refer to the Revised Statutes of 1899,
which were in force at the time.

Section 1024 provides that ''every corporation for
pecuniary profit formed in any other State, territory or
country, before it shall be authorized or permitted to
transact business in this State, or to continue business
if already established, shall have and maintain a pub-
lic office or place in this State for the transaction of
its business, where legal service may be obtained upon
it, and where proper books shall be kept
to enable such corporation to comply with
the consititutional and statutory provi-
sions governing such corporation.'' We
note that this provision requires certain
things to be done that necessarily involve
the making of contracts before it shall be
permitted to transact business in the State or to con-
tinue its business if already established. As a condition
precedent to the transaction of any business it must
make all necessary contracts for the purchase or
lease of real estate, and the construction or renting
and fitting up of its office for the keeping of all books
and the performance of all work necessary to enable it
to comply with the constitutional and statutory provi-
sions which will govern it in its new domicile. That this
section contemplates the right of the corporation to
purchase as well as to lease lands for that purpose is
shown by the provision which forbids it to hold any
real estate for more than six years ''except such as may
be necessary and proper for carrying on its legitimate
business.'' This demonstrates that it is not the making

Lease by
Foreign
Corporation
Before
Compliance
With Law.

of a contract for performance within the State which is intended to be forbidden without regard to its nature or object, but that the inhibition is directed against the making of all contracts and the doing of all acts which constitute the transaction of business within the meaning of its terms. Further light is thrown upon the same question by the initial provisions of the next succeeding section (1025) which require the corporation to file in the office of the Secretary of State a certified copy of its charter with a sworn statement of "the proportion of its capital stock represented by its property and business in Missouri," and to pay the incorporating taxes and fees thereon, as preliminaries to the issue of its certificate of authority to do business in the State. These last provisions are directed against companies "now or hereafter doing business within this State," and contain no provision *limiting* the duty to the time before they begin the transaction of their business here. The duty is a continuing one, and if it is forgotten or neglected or evaded today the corporation is not outlawed so that it must pack up its effects and leave the State, but the duty is expressly continued by the very words of the law creating it; and by the next section the punishment is fixed, not by outlawry, but by fine. Recapitulating the process of naturalization of the foreign corporation in the order in which the process is prescribed by the statute: (1) the establishment of an office full-fledged, for the performance of the duties relating to its incorporation; (2) the filing of its charter and other information necessary to subject it to police and revenue laws of the State; (3) the issue of its certificate. Having done this it may enter upon the employment of that portion of its capital stock upon which it has paid its incorporation fee, in the transaction of the business for which it was incorporated, and make all contracts necessary to that end. The statute is expressed with the greatest grammatical precision, and until we attempt to distort

it by substituting our own ideas for those evidently in the minds of its framers, we have little difficulty in its construction.

This court expressed the same view in Hogan v. City of St. Louis, 176 Mo. 149, in which the Kern Company, a New Jersey corporation not domiciled in Missouri but having its office in New York, had agreed to light a considerable portion of the city of St. Louis. The case came here by appeal from a decree of the St. Louis Circuit Court refusing to enjoin the company from carrying out the contract on the ground that it had not qualified itself to transact business in this State by complying with the statutes we are now considering. In affirming the judgment the court said, through VALLIANT, J.: "But we do not consider it material whether the contract was made in St. Louis or in New York; we refer to the fact merely to illustrate the difference (in relation to the term 'transact business') between entering into a contract to do an act and the performance of the act. The one may be lawful *per se* and the other lawful only on condition. Of course, a contract cannot be lawfully made to do an unlawful act, but a contract may be lawfully made to do an act which the contracting party can lawfully do only when he shall have complied with conditions or satisfied other demands, and his unconditional contract to do it carries with it the obligation to comply with those conditions or satisfy those demands; he assumes the risk of being able to do so. . . . Now, when our statutes say that a foreign corporation shall not 'transact business' here until it establishes a public office in this State where books are kept and process may be served, and until it pays its quasi-incorporation tax and takes out its license, do they mean that the corporation must do all those acts before it can lawfully enter into a contract to do any business here? Does our law mean that when advertisements inviting bids on public or private works in this State are read by foreign corporations

they are to understand that they have not the
right to bid and have their bids accepted unless
they shall have already complied with the terms of our
statute to enable them to transact business here? No,
that is not the meaning of our statutes. No such policy
of exclusion has ever been shown in any of our legisla-
tive acts; foreign corporations have always been invited
and encouraged to come. The obtaining of a desirable
contract is sometimes an inducement for a foreign cor-
poration to come into the State; it is not bound to es-
tablish itself here before it can obtain such a contract.
Entering into a contract like the one in question un-
doubtedly is 'transacting business' within the unlimited
meaning of the term, but that is not the sense in which
the term is used in the statute just quoted. As there
used it means carrying on the work for which the cor-
poration was organized, and in its application to the
facts in this case it means performing the work called
for by the contract.''

It is true that in United Shoe Machinery Co. v.
Ramlose, 210 Mo. 631, this court, speaking by Bur-
gess, J., referring to these statutes said: ''They not
only declare all contracts entered into in this State by
foreign corporations not complying therewith, void,
but inhibited the institution of any suit thereon;'' but
it is evident that the learned judge was speaking only
of the facts before him and did not intend to announce
the general rule that the inhibition was against the mak-
ing of any contract instead of being directed against
its subject-matter. The true rule was stated by Wood-
son, J., in the opinion of the court in Roeder v. Robert-
son, 202 Mo. 538, as follows: ''It was not the intention
of the Legislature to prohibit the enforcement of
valid contracts made by foreign corporations in their
own States with citizens of this State. There is noth-
ing in our laws which denies the right of such corpora-
tions to enforce valid contracts, whether made in this
State or not.'' This interpretation is, therefore, not

only founded on the natural meaning of the words of the statute, but has been affirmed and finally settled by the adjudications of this court.

But it is insisted that we should take into consideration the fact that at the time this lease was dated and seems to have been made the respondent was already doing a general business in violation of the law and that the subject-matter of the lease was in furtherance of that business and it was therefore in violation of the law and void. We will, therefore, for the present purpose only, assume that, although the respondent had for years occupied the same building as the tenant of the same lessor, the lease was not only made on the date of its date but that it entered under it on the first day of January, 1902, the date appointed in the instrument, and maintained its office there until it received its certificate on the 13th of the same month. It also continued to hold the same premises under the same lease during the succeeding five years and up to the time of the service upon it by appellant of the notice to quit which laid the foundation of this action. The presumption is that during that time it paid the monthly installments of rent when due, and the evidence is that it continued to tender the same on the date of payments fixed in the lease, each month up to the time of the trial. During all this time its certificate was a matter of public record and there is no claim that the lessor did not have independent knowledge of its existence. Having, through all those years received its benefits upon the theory of its validity, he will be held by his ratification to have supplied the only element necessary to complete it at a time when the respondent was competent to take under its provisions. This effect follows whether it was void or only voidable, and the parol ratification gives effect to the written instrument according to its terms. [Austin v. Loring, 63 Mo. 22; Clyburn v. McLaughlin, 106 Mo. 521; Hartman v. Hornsby, 142 Mo. 368; Ansonia v. Cooper, 66

*Ratification.*

Conn. 184; same case, 64 Conn. 536; 21 Smith's Leading Cases (5 Am. Ed.), 662.]

It follows that the judgment on the verdict must be and is affirmed.

PER CURIAM.—The foregoing opinion of BROWN, C., is adopted as the opinion of the court. All the judges concur.

## CONCURRING OPINION.

WOODSON, P. J.—I concur in all of the opinion written by our learned commissioner, in this case, except that part which treats of the alleged ratification of the lease by the appellant.

The ratification of a contract, which is absolutely prohibited by statute, will no more be recognized and enforced by the courts of this State, than they would recognize or enforce the contract itself. [United Shoe Machinery Co. v. Ramlose, 231 Mo. 509, l. c. 531 to 541, and cases cited. ]

All contracts absolutely prohibited by statute rest upon precisely the same foundation that contracts involving fraud and immorality do. The courts will leave the parties thereto in the position in which they have thereby placed themselves. [See case previously cited.]

But independent of the ratification, the opinion, in my judgment reaches a proper conclusion, and for that reason, I also concur in the result thereof.