GERMAN AMERICAN BANK, Appellant, v. THOMAS SMITH, Respondent.

St. Louis Court of Appeals. Argued and Submitted January 9, 1919. Opinion Filed March 4, 1919.

1. **CORPORATIONS: Foreign Corporations: Not Licensed and Doing Business in State: Indorsee: Note Invalid.** If a note is void by reason of the failure of a foreign corporation, payee therein, doing business in this State, to take out a license under the laws of this State, then the endorsee cannot recover on such note.

2. ———: ———: ———: **Commerce: Interstate Commerce.** Where a foreign corporation is carrying on interstate commerce not license is required by the laws of this State.

3. ———: ———: ———: ———: ———: **Valid Note.** Where a note was executed, payable to the order of a foreign corporation for the purchase price of articles sold to be delivered f. o. b. cars at a point in a foreign State consigned to the maker of the note in this State, there was an absolute sale of the articles then in such foreign State delivered there to the maker of the note shipped from there to the maker of such note, and such note was not void because of the foreign corporation's failure to obtain a license to do business in Missouri as required by statute; the transaction being interstate commerce no license is required to carry it on.

4. **BILLS AND NOTES: Holder for Value Before Maturity: Available Defenses: Fraud.** In view of Sections 9999, 10022, 10024, 10025 and 10026 of the Revised Statutes of 1909, even though the payee in a note secured the note by fraud, such fact was not available as a defense as against plaintiff endorsee, a holder for value before maturity with no knowledge of such fraud, although the holder knew that the payee took such note on account of sales of its products, etc., and agreed with plaintiff endorsee to pay the costs of collection; mere suspicion is not knowledge.

Appeal from the Circuit Court of Warren County.—
*Hon. James D. Barnett,* Judge.

REVERSED AND REMANDED (*with directions*).

*Morsey & Roehrig* and *Clarence A. Barnes* for appellant.

Plaintiff filed in order, first, a motion for judgment on the pleadings which was overruled; then a motion to strike out the 2, 3, 4, and 5 alleged defenses, which was sustained as to defense No. 2, but overruled as to defenses 3, 4, and 5; and thereupon plaintiff filed a demurrer to defenses 3, 4, and 5, which was overruled, and to the action of the court therein, and upon each of the aforesaid motions, properly preserved its exceptions thereto; and for the purpose of convenience presents its authorities relative thereto jointly. A motion for judgment on the pleadings is proper practice. Hurt v. Ford, 142 Mo. 283, 298; State ex rel. v. Simmons Hardware Co., 109 Mo. 118; Sternberg v. Levy, 159 Mo. 617; Grandy Mining & Smelting Co. v. Davis, 156 Mo. 422. (1) The matter set up as alleged defense 3, constitutes no defense, for the reason that the defendant maker of the note could not raise the question of the invalidity of the transfer. R. S. 1909, sec. 10030; Cantrell v. Davidson, 180 Mo. App. 410; Young v. Gaus, 134 Mo. App. 166. (2) The alleged defense No. 4 raises no issue for the reason that it does not plead that the note in suit was given for a transaction in Missouri, by the payee as intrastate business as distinguished from interstate business. Star Chronicle Publishing Co. v. United Press Association, 204 Fed. 217, 222; Rogers v. Union Iron Foundry Co., 167 Mo. App. 228; Security State Bank v. Simmons, 251 Mo. 2; International Text Book Co. v. Gillespie, 229 Mo. 397; Wulfing v. Armstrong Cork Co., 250 Mo. 723. (3) The alleged 5 defense does not plead any notice of the supposed fraudulent allegations to the plaintiff bank, and is not verified.

when the fraud charged pertains to the execution of the instrument sued on, the answer setting up fraud must be sworn to, or it will not be sufficient to put fraud in issue. Avery Co. v. Powell, 174 Mo. App. 628; R. S. 1909, sec. 1985; Beck v. Obert, 54 Mo. App. 240. The plea of a general denial raises no issue in this case for the reason that the answer was not verified, and the execution and delivery of the note was expressly admitted, and particularly was no issue raised for the reason that the general denial was followed by special pleas of confession and avoidance. Whitwell v. City of Aurora, 139 Mo. App. 602; Bank of Monett v. Stone, 83 Mo. App. 292; State v. Delmar Jockey Club, 200 Mo. 34. (4) (5). The court erred in refusing to direct a verdict for plaintiff at the close of defendant's case, and at the close of all the evidence in the case. McLean Co. Bank v. Brown, 187 S. W. 785; Bank v. Cape Girardeau & C. R. Co., 172 Mo. App. 662; William Bank & Trust Co. v. Miles, 169 S. W. 268; Bank of Monette v. Hale, 149 S. W. 845, 104 Ark. 388; R. S. 1909, sec. 10026. (6) It was improper to ask witness Wolchner whether he inquired from the indorser of the note if he had authority to indorse the same. R. S. 1909, secs. 9993, 10030; Young v. Gaus, 134 Mo. App. 166. It was improper to ask this witness whether he had inquired if the board of directors had met and authorized the indorsement. Cantrell v. Davidson, 180 Mo. App. 410. It was likewise improper to ask how many other notes the Pioneer Stock Powder Co., had hypothecated. The maker of a collateral note cannot compel the pledgee, before enforcing it to exhaust other securities held by him for the principle debt, even though the maker has a setoff against the pledgor. Elk Valley Coal Co. v. Third Natl. Bank of L., 163 S. W. 766. (7) The court erred in modifying plaintiff's instruction No. 4, by striking therefrom the closing sentence, "The burden is on defendant to establish by preponderance of evidence that plaintiff is not a *bona-fide* holder of the note sued on as defined in this instruction." O'Shea v. Lehr, 165

S. W. 837; Sims v. Everett, 168 S. W. 539; R. S. 1909, sec. 10021. The so-called third defense was not, as a matter of fact, a defense at all, and in addition thereto, it must be borne in mind that the suit was predicated upon a note indorsed to the bank in writing, there by making a prima-facie case for the bank, both under the Negotiable Instrument Act, and the authorities construing the same. R. S. 1909, sec. 10015, 10029; Bank of Polk v. Wood, 189 Mo. App. 62. (8) Plaintiff's refused instruction No. 8, should have been given: first, because no fraud inhered in the note itself; second, because there was no fraud pleaded amounting to a personal defense to said note, as distinguished from a real defense; third, because the evidence shows absolutely that there was not notice given the plaintiff of any of the supposed acts relied upon claimed by defendant as fraudulent; fourth, because the evidence as a whole shows that there was no fraud in the procurement of the note; fifth, because the answer was not verified. (9) Plaintiff's refused instruction No. 11 should have been given, for the reason, that the court had permitted the defendant to make its defense under the allegations denominated third defense, and also under the so-called allegations of the fifth defense, because the burden was upon the defendant to prove a fraudulent transfer or indorsement of the note, or that the indorsement thereof was made after maturity, for the reason that its defense is not such as is commonly termed inherent in the note itself and real, but of a personal nature which requires actual notice, of which the evidence is not only wholly lacking, but the defendant's own evidence contradicts all suggestion thereof. Leavitt v. Taylor, 163 Mo. App. 158; Bank v. Eubank, 124 Mo. App. 499; McLean Co. Bank v. Brown, 187 S. W. 785; Bank v. Cape Girardeau & C. R. Co., 172 Mo. R. S. 1909, 10030. (10) Plaintiff's instruction No. 12, should have been given by the court. It was peculiarly applicable to both of the defenses which the court permitted the defendant to take to the jury. R. S. 1909, secs. 10022, 10029. (11) Plaintiff's

refused instructions numbered 9, 13 and 14 should have been given in view of the giving of defendant's instruction No. 4 and No. 2. (12) Plaintiff's refused instruction No. 15 should have been given by the court as fraud is never presumed and must be proved, and the burden is upon the party alleging it to prove it; and there were no facts submitted to the jury showing fraud as between the plaintiff and the payee of the note, and the indorsement of the note by the payee to the plaintiff was not denied; and further the defendant by the execution of said note, which was admitted, thereby represented that the payee had authority to negotiate the same, and in addition thereto set up in the alleged third defense that the note was indorsed to the plaintiff for indebtedness accrued subsequent to the institution of the suit, thereby admitting the endorsement and only attacking the date at which same was made. Hayes v. B. F. Blaker Co., 138 Mo. App. 24; Avery Co. v. Powell, 174 Mo. App. 628; R. S. 1909, sec. 1985; Beck v. Obert, 54 Mo. App. 240; Young v. Gaus, 134 Mo. App. 166; Brannan's Negotiable Instrument Law (2 Ed.), p. 72; United Shoe Machinery Co. v. Ramlose, 210 Mo. 631. (13) The court erred in giving defendant's instruction No. 2 in that said instruction assumed, what was neither pleaded nor proven, to-wit: negligence on the part of the bank in accepting the note in controversy. Before the question of good or bad faith on the part of the plaintiff in accepting the note, could be inquired into, it had to be established that the note had been procured by fraud and the title of the payee found by the jury under proper instructions to be defective, the jury were not entitled to even consider the position of plaintiff and its title to the note unless it first found the payee's title defective. R. S. 1909, secs. 10025, 10027, 10029, 10030. (14) Defendant's instruction No. 3 should not have been given for the reason, that it gave a roving commission to the jury to find for the defendant, did not limit the grounds of fraud to those attempted to be set up in the unverified answer, and requiring the jury to

find that the note in suit was received as collateral for a note or notes then due instead of then held or possessed. (15) Defendant's instruction No. 4 should not have been given, for the reason that it submits to the jury a matter admitted by pleadings and evidence, that the note was given for a consideration passing from the payee to the defendant. The want of consideration was not a plea in the case; his own pleadings show to the contrary, as well as his proof, and before want of consideration could be shown if it had been pleaded, it would have had to be proven that plaintiff was not a holder in due course. Plaintiff was a holder in due course. R. S. 1909, sec. 10022. Note was prima-facie issued for value. R. S. 1909, secs. 9995, 9996. Failure of consideration not a defense. R. S. 1909, sec. 9999. (16) The court erred in giving defendant's instruction No. 5, for the reason that the burden was not upon the plaintiff to prove the matters therein set forth. A fraud in the procurement of the note had to be pleaded and proven, and actual knowledge of the fraud had to be brought home to the plaintiff before the burden shifted to it. (17) The court erred in giving defendant's instruction No. 6, for the reason that said instruction does not follow the answer as to the elements of fraud complained of, and was unsupported by the evidence, and the acts complained of are not sufficient as a matter of law to constitute fraud, and all the testimony negatives the idea of any notice whatsoever to the plaintiff bank of representation of any kind whatsoever. Mere expressions of opinion as distinguished from representations as to existing facts, cannot be made the basis of an action for fraud. Williamson v. Harris, 167 Mo. App. 347; Union Nat. Bank v. Hunt, 76 Mo. 439. The law indulges the presumption of good motives. Kilpatrick v. Wiley, 197 Mo. App. 123. Fraud without a resulting injury is not actionable. Traber v. Hicks, 131 Mo. 180; Birch Tree State Bank v. Dowler, 167 Mo. App. 373.

*T. W. Hukriede, J. W. Delventhal* and *Rosenberger & Dowell* for respondent.

(1) (a) Where defendant has been successful in the trial court, and upon an examination of the entire record in the case it appears, as a matter of law, that plaintiff is not entitled to recover under any circumstances, then it matters not what errors may have been committed in the trial of the cause.  (b) The transaction between Doty, the agent of the Pioneer Stock Powder Company, and defendant Smith, was a Missouri contract.  The cause of action accrued in Missouri. Barnett et al. v. Colonial Hotel Bldg. Co., 137 Mo. App. 636.  (c) It stands admitted that the Pioneer Stock Powder Company, the payee named in the note in question, is an Illinois corporation.  The record in this case shows that said corporation was transacting business in Missouri at the time it received the note in suit, and the note is void because the payee had failed to comply with section 3039, R. S. 1909.  The payee, the Pioneer Stock Powder Company, was engaged in an intrastate business as distinguished from an interstate business, and although it be conceded, for the sake of argument—a proposition, however, that defendant strictly denies— that the note in question had been hypotheticated in good faith to the plaintiff bank, the plaintiff bank could not recover thereon.  Erhardt Bros. v. Robinson Bros., 78 Mo. App. 404;  Fay Fruit Co. v. McKinney Bros. & Co., 103 Mo. App. 304.  (2) The trial court did not commit any error in overruling plaintiff's motion for judgment on the pleadings, plaintiff's motion to strike out, and plaintiff's demurrers.  (3) The respondent has always contended, and still contends that the alleged transfer was a mere sham and subterfuge to cover up the tracks of the Pioneer Stock Powder Company, and that the alleged hypothication of the note in question was not made in good faith; that the plaintiff bank willingly loaned itself as a tool to the Pioneer Stock Powder Company as a collection agency so that the

Pioneer Stock Powder Company could perpetuate frauds on the farmers of Missouri, and then with the plaintiff's assistance use the negotiable instrument act as a shield to protect itself. (4) Defense No. 4 as pleaded by respondent relating to the failure of the 'Pioneer Stock Powder Company, a non-resident corporation, to comply with the Missouri corporation laws, was properly pleaded. (See authorities cited under Point 1 hereof. (5) (a) While defendant's answer was not verified, it did plead notice of the fraud complained of to the plaintiff bank. Appellant contends that when the fraud charged pertains to the execution of the instrument sued on, the answer setting up fraud must be sworn to or it will not be sufficient to put fraud in issue. The statute and cases cited by appellant on that proposition do not apply to the case under consideration. The fraud charged did not pertain to the execution of the note, but pertained to its inducement, and hence it was not necessary to verify the answer. (See cases cited by appellant on page 6, appellant's brief, middle of page.) (b) Even if defendant's answer should have been verified by affidavit, it is too late for appellant to raise this question, for the first time, in this court. Appellant in none of its motions or demurrers raised that question, neither did appellant raise it by timely objection to the introduction of evidence; neither did appellant raise that question in its motion in arrest of judgment—or in its motion for a new trial. An objection to the sufficiency of such defense on the ground that the answer whereby it is made was not verified by affidavit, cannot be made for the first time in this court. Beck v. Obert, 54 Mo. App. 240. (6) Section 9999, Revised Statutes 1909, permits the defense of a total or partial failure of consideration against all persons, except a holder in due course, and a holder in due course is defined by section 10022, Revised Statutes 1909. Section 10025, Revised Statutes 1909, defines what is a defective title, and the following section 10026 defines what constitutes notice of infirmity. (7) While neither negligence, nor knowledge of suspi-

cious circumstances, nor failure to inquire into the consideration will in and of itself be bad faith, such facts, when proven, may be considered by a jury in arriving at the ultimate fact of the good or bad faith of the plaintiff, and where the allegations of plaintiff's petition are denied by answer, and plaintiff has made out a prima-facie case by oral testimony, and the defendant offers no testimony at all, the court cannot direct a verdict for the plaintiff, but the defendant has a right to go to the jury, and the power of the trial court in such cases, where the verdict is not supported by the evidence, is restricted under the statutes to the granting of one new trial. Link v. Jackson, 158 Mo. App. 63. (8) Under the Missouri negotiable instrument act the burden of evidence is the same, whether the note was obtained through fraud, or was given without consideration, and under sections 10025, 10026 and 10029 of said act, it is upon the holder, after it is shown that the title of any person who negotiated the instrument is defective, to prove that he, or some person under whom he claims, acquired the title as a holder in due course. Jobes v. Wilson, 140 Mo. App. 281; Bank v. Hanks, 142 Mo. App. 110; Bank v. Mills, 143 Mo. App. 265; Birchtree State Bank v. Dowler, 163 Mo. App. 65; Link v. Jackson, 164 Mo. App. 195.

STATEMENT.—The German American Bank, a banking corporation organized under the laws of the State of Illinois and located at Bloomington, in that State, brought this action against Thomas Smith, the defendant, on a note for $1200, dated at Warrenton, this State, February 5, 1913, payable six months after date to the order of the Pioneer Stock Powder Company, at the Citizens' Bank of Warrenton, located in that city, in Warren County, this State. It is a negotiable note and fell due August 5, 1913. It was endorsed by the Pioneer Stock Powder Company, hereafter for brevity called Powder Company, to the order

of the German American Bank by its president. Not being paid, it was duly protested.

The petition avers that before maturity of the note the Powder Company indorsed the same in writing and delivered it to plaintiff for value, whereby it became the owner and holder in due course, and that no part of it has been paid.

The answer begins with the averment that defendant denies all the allegations in the petition except the following, namely; It admits that defendant signed the note and that plaintiff is a corporation existing under the laws of Illinois, engaged in banking business in Bloomington, in that State, and that defendant is a resident of Warren County, this State. Then follows these defenses:

A denial that the note was ever sold to plaintiff, and the averment that for the purpose of depriving defendant of making a defense against the payment of the note, and *"a few days before the maturity thereof,"* an officer of the payee voluntarily, and without request from plaintiff, delivered it to plaintiff as alleged collateral security for notes then owing by the Powder Company to plaintiff; that this was not in good faith, or in due course of business but merely made for the purpose of preventing defendant from setting up a defense against the note in the hands of the original payee; that the plaintiff took the note with full knowledge and notice that defendant had a valid defense against it, and merely took it for the purpose of making it appear that it is the holder thereof in due course; that plaintiff is not entitled to recover or to maintain this action, for the reason that since the institution of this suit the notes for which it was put up as collateral have been fully paid off and satisfied, and that plaintiff is not now the holder of the note as collateral security for any note or notes owing by the Powder Company and that it holds it as collateral for obligations made and created since the institution of this suit and cannot recover.

Another defense is to the effect that the Powder Company is a foreign corporation, organized under the laws of the State of Illinois, with principal office in Bloomington, that State; that on February 5, 1913, and prior thereto, the Powder Company was engaged in transacting business in this State, in selling stock powder, stock feed and stock dip in various counties in this State; had agencies established in a number of different counties in this State, with agents in charge who were engaged in selling and delivering to the public at large in this State the products of the Powder Company; and that the note here sued on was given by defendant for stock powder purchased by him from the Powder Company; that on February 5, 1913, and prior thereto, the Powder Company had failed to comply with the provisions of the laws of this State, requiring foreign corporations to be licensed to do business in this State, and had no license authorizing it to do business within this State. Hence it is claimed that the note is and at all times was void, unenforcible and uncollectible, and that plaintiff is not entitled to maintain this action and recover on it.

For the final defense it is set up that the note was procured by fraud and false and fraudulent representations made to defendant by one Doty, agent and representative of the Powder Company, under the following facts, namely: That for the purpose of inducing defendant to purchase 40,000 pounds of stock powder from the Powder Company, at six cents per pound, Doty falsely and fraudulently stated and represented to the defendant that the stock powder contained great medicinal virtues and values; that if fed to live stock and poultry it would cure and prevent all diseases to which live stock and poultry were ordinarily and usually subject; that it was especially valuable as a worm expeller and would expel worms from live stock and poultry; that it contained certain ingredients, and that Doty, in furtherance of his fraudulent scheme and for the purpose of inducing defendant to purchase the

40,000 pounds of stock powder from the Powder Company, exhibited to defendant a lot of worms in bottles, which Doty falsely and fraudulently represented were samples of worms which had been expelled from live stock which had been fed this stock powder; that in order to carry out this scheme to defraud and induce defendant to purchase the stock powder, Doty .promised and agreed that if defendant would purchase from the Powder Company 40,000 pounds of the powder, that the Powder Company would appoint defendant their sole agent to represent the Powder Comany in, the sale of its products in Warren County, and that the Powder Company, at its own expense, would send a number of traveling salesmen and experts into Warren County to assist defendant in selling ''his 40,000 pounds of stock powder,'' and further agreed with defendant that if he would purchase the stock powder, the Powder Company would assist him in securing subagents in each of the several townships in Warren County. Charging that all these statements made by Doty were untrue and known by Doty to be false, fraudulent and untrue, and made by Doty for the purpose of inducing defendant to buy stock powder, but that defendant believed them to be true and relied thereon, but was deceived thereby, and that, relying on these false and fraudulent representations and statements of Doty, he was induced to purchase and did purchase 40,000 pounds of said stock powder from the Powder Company, at six cents per pound, and in evidence of the purchase was induced to execute to the Powder Company two notes for the principal sum of $1200 each, one of them being the note in suit; that when the powder arrived defendant received and receipted for it and tried to make sales thereof as he had been directed by Doty; that he did sell a small amount thereof, not to exceed in value $150, but that all the powder he had received from the Powder Company and sold to others was useless and valueless for the purposes and uses for which defendant had bought and sold it to his customers, and

that the powder which defendant still has on hand un-sold is useless and worthless for the purposes and uses for which it was sold by the Powder Company to him; that he has frequently offered to return to the Powder Company, at his own expense, the stock powder he has on hand remaining unsold, and offered to pay for the powder which he had sold to others; that these offers had been made in good faith by defendant before the Powder Company ever turned over the note in con-troversy to plaintiff, but that the Powder Company re-fused to accept the offers; that the Powder Company rendered him no assistance in trying to sell the powder he had bought of it; did not send any representative to Warren County, or anybody to assist him in making sales and did not send anybody to Warren County to assist defendant in procuring sub-agents to help him sell the powder; that plaintiff is not the holder and owner of the note sued on in due course; *"that a few days before said note matured* the Pioneer Stock Powder Company, through one of its officers, took said note and turned the same over to plain-tiff as alleged collateral to secure an indebtedness owing to plaintiff by the Pioneer Stock Powder Com-pany; that the plaintiff bank, in order to enable the Pioneer Stock Powder Company to recover on the note in controversy, together with a large number of other notes which were given to the Pioneer Stock Pow-der Company by various individuals, and which were without consideration, or were secured by fraud, entered into a fraudulent agreement with the Pioneer Stock Powder Company," that it might from time to time turn over and indorse to the bank, as alleged collateral for alleged debts owing by the Powder Company to plaintiff, such notes as the Pioneer Stock Powder Com-pany had in its possession, and which were tainted with fraud, or had been executed without consideration, and that the plaintiff bank should and would claim to be the holder of these notes in due course; that in pursuance

of this fraudulent agreement the note in controversy was delivered to plaintiff by an officer of the Powder Company *"just a few days before its maturity,"* for the sole purpose of enabling plaintiff bank to bring suit on the note, as holder thereof in due course; that this note was not hypothecated with the plaintiff bank by the Powder Company in good faith and was not accepted by the bank in good faith, to secure the payment of any debt owing by the Powder Company to plaintiff bank, but that this hypothication of it is a mere sham and subterfuge on the part of plaintiff bank and the Powder Company in order to make it appear that plaintiff bank is the holder of the note in due course, and defendant avers that the bank is not a holder in due course and that it took it by way of hypothication in furtherance of the fraudulent scheme mentioned, with full notice and knowledge that the consideration for the note had failed and it was procured by and through fraud, where it is claimed that plaintiff ought not recover. (Italics ours).

On this answer plaintiff filed a motion for judgment and subsequently a motion to strike out portions of it. These motions were overruled, except as to striking out one of the defenses set up, as before stated. Whereupon plaintiff filed a demurrer to the answer as it stood, which was overruled, plaintiff filing a general denial by way of reply.

The cause went to trial before the court and a jury, resulting in a verdict in favor of defendant. Filing a motion for new trial and saving exceptions plaintiff has duly appealed.

By the bill of exceptions duly filed in the case it appears that the note and protest were introduced in evidence, the execution of the note not only denied but admitted.

The defendant, as a witness in his own behalf, testified that he had written to the Powder Company that he wanted to take some local orders for it and wanted to sell as local agent. A few days afterward Mr. Doty,

representing the company and accompanied by a Mr. Bentley, a relative of defendant, came to his house and, according to defendant, showed him samples or exhibits. What they were does not appear very clearly, except that it seems that among them he had a bottle or package of worms that he claimed had been expelled from animals to whom the powder had been given, and exhibited to defendant the "medicine files" which we assume were samples, which he had in this case, and explained what the medicine had done for stock. He then commenced talking to plaintiff about taking the position with the company, which had made arrangements to let their agencies out for county rights, and wanted defendant to take all of Warren County to work in—to turn Warren County over under his supervision —and he would establish agencies under himself to work in the county, the Powder Company putting an experienced man in every township; would have from four to five experienced men. Doty then wrote out a contract and the notes and asked defendant to sign them. Defendant said that that was too big a job for one man to undertake. "I would rather you would put these men in right away," to which Doty said he need not be "a bit uneasy. . . . We will have the carload half sold before it gets here. You sign up these papers and I will come and put these men in and we will dispose of this stuff right away;" and defendant testified "Of course I signed the notes under his instructions that way." Doty also promised that he would be back in a few days and put these men in but he did not come back. Asked to tell all that Doty had said, witness answered that Doty said he believed the powder to be one of the best stock powders on the market; believed it was one of the greatest worm extinguishers on the market; mentioned that he was coming back along through the summer; was going to buy some of the poorest hogs he could find and give demonstrations. Asked what Doty told him the powder was made of, witness said he could not tell the ingredients Doty claimed were in it,

except that he remembered three of them, golden seal, "annotatine," and German worm seed, and also portions of white willow charcoal; that it was an "all purpose" powder, good for any kind of sickness in stock; would not cure hog cholera, but prevent it in almost any case; good for all kinds of stock and also poultry and equally as good for man.     Defendant testified he was then handed the contract, or a duplicate copy of it, which when introduced he identified as the one signed up between himself and Doty, the latter representing the Powder Company, and that at the same time he signed this, he signed the note in controversy as well as another for a like amount.     Asked by his counsel if he believed the statements of Mr. Doty to be true, over objection of plaintiff, defendant answered: "Well, of course in a way I didn't believe it and in a way I did. Of course I put more confidence in the man, I reckon, than I ought to and I relied on his confidence a great deal, but Mr. Bentley being alone with him, I thought if he was a crook or anything like that Mr. Bentley, being a relative of the family, would give some nod or wink or something.     I signed the note in good faith, if he had fulfilled his promises."     Defendant further testified that he received the 40,000 pounds of stock powder and stored it; did not think he had sold over a thousand pounds of it but about in that neighborhood; before the notes fell due had offered to return that part of the stock powder he had on hand to the Powder Company.     On cross-examination defendant repeated that he had signed the contract in duplicate—he and Doty each signing and defendant keeping one copy and the other being kept by Doty.     Asked if that represented the agreement, witness said it represented the agreement as far as it was in writing but that they had a verbal agreement, which was the one he had testified to, which was made before he signed the written contract—the verbal agreement made a few minutes before he signed. When the contract was offered to him to sign, he paused a minute and told Doty that he didn't care about

signing these papers; that it was too much of a burden for one man to take on his shoulders, and Doty said that by the time he (Doty) put five agents in to help him "You will have half of it sold out before it gets here." Doty put in one agent, through whom he sold about $750 worth of powder, but not out of defendant's stock; did this a week or two after the contract had been signed. Defendant testified that he went out a few days after signing the contract and tried to sell the powder after he received it, which was not until a month after the order was taken. When he signed the contract a bill of sale was given him to show that he had bought 40,000 pounds of the stock powder to be delivered f. o. b. cars at Bloomington, Illinois.

At the conclusion of this witness's testimony the contract was offered by defendant and introduced in evidence. By way of preamble, this contract sets out that the Power Company, being sole owner of the right to manufacture and sell all Pioneer Stock Powders and Pioneer dip, and it being the purpose of the company to not sell either except through regularly constituted agents or dealers, it agrees to furnish all authorized agents or dealers in the stock powder dip, in quantities governed by the amount of territory which they wish to canvass and at any time during the term of the appointment, at the uniform factory price of $6 per hundred pounds for the powder and 90 cents per gallon for the dip, f. o. b. cars, Bloomington, Illinois, "and guarantee that all said powders and dip shall be in every way the equal and as perfect *as the sample shown* (italics ours); otherwise refund the purchase price." The company further agrees to secure the best possible freight rates before shipping, to ship all agents legally holding a copy of the contract, to keep a sufficient quantity of these powder and dip on hand to fill all orders promptly and to pay all parties engaged in the business of selling the powder and dip any damages they may sustain due to any failure on the part of the company, and to supply these powders and

dip on demand except in cases of fires, strikes, epidemics, or any cause not controlled by said company. The contract then proceeds:

"Therefore Be It Known By These Presents, That the said company has this day appointed, and does by this instrument constitute and appoint Thomas Smith of the town of Pendleton, county of Warren, and State of Missouri, their sole and exclusive agent or representative, and grant unto him, his heirs, successors or assigns, the exclusive privilege of selling said stock powders, or dip in the County of Warren, State of Missouri, during the period of mutual satisfaction, with full power to transfer same at will and with the privilege of renewing said contract from year to year, and it is agreed that this appointment shall expire on the 5th day of February, 1914, after which date the business and all privileges held under and by virtue of this instrument shall cease, together with all obligations on the part of the company to furnish said powders and dip, and all goods, over and above contract unsold and remaining in the hands of said agent, or his resident dealers, at the expiration of this appointment, may revert to said company upon payment to said agent the factory price of said powders and dip, plus the freight from factory to point of location."

It is further agreed that the company should furnish at least two days' assistance by an experienced salesman at such time, as best suits their convenience, Smith, party of the second part, to pay the expenses of salesmen, incurred while rendering such assistance. It is further provided that the agent, on his part, agrees to use diligence and energy in canvassing, to go into the field himself or send subagents, and have the same thoroughly canvassed as soon as convenient, to confine his operations to the field named, and further agrees not to sell the powders and dip or allow it to be sold for a less price than the regular quotations as per price list attached hereto and made part hereof, and as soon as the field has, in his judgment, been sufficiently can-

vassed, he agrees to place the powders on sale with as many resident dealers as is deemed expedient, and furnish them the powders at the regular dealer's price of seven dollars per thousand. It appears that along with this contract there was a bill of sale from the Powder Company to defendant of 40,000 pounds of powder, whether any "dip" was included, does not appear, the articles delivered to defendant at Bloomington, Illinois, "f. o. b." This bill of sale was attached to the contract.

A witness on behalf of defendant testified that she had bought some of the powder and fed it to her chickens; that the chickens had been in good health when fed, but after she commenced feeding the powder to them they commenced to die; had lost about twenty-five of them; had kept feeding the powder to them until all but nine of them died.

Another witness testified that she and her husband had bought some of the powder and fed it to horses, mules and hogs, and some to chickens when the latter were dying of cholera; did not feed them enough to know whether the powder did them any good or not.

The husband of this lady testified that he bought a thirty-pound bucket of this powder from defendant, fed some to his horses and some to his hogs, and that his wife fed some to the chickens; did not notice any change in the condition of the animals. A couple of the horses did not like it and he quit feeding it to them.

Another witness for defendant testified that he had purchased some of this powder from defendant, a thirty-pound jar; fed it to his mules and to one horse; fed it in accordance with the directions on the package. The mules commenced to get poor on the same feed he had been giving them before he fed the powder and he quit using it.

Another witness for defendant testified that he had purchased a pail of, this powder from defendant— about thirty pounds; tried to feed it to his horses and mules but they would not eat it. The hogs ate it in slop and one hog took sick and he quit using the powder.

A lady, daughter-in-law of defendant, testified about as did defendant, as to the conversation between defendant and Doty, substantially corroborating defendant's version of that.

There was testimony for defendant that the powder contained sodas and pure drugs, also sulphur and charcoal, but not white willow charcoal, and various other ingredients, and no German worm seed, other ingredients to produce a like effect being used.

Over the objection of plaintiff the president of the Powder Company, was asked as to whether his company had a license to do business in the State and he said it had not; identified the contract in evidence as the form used by them except that there was always attached a bill of sale.

It may be stated generally that on the part of plaintiff it was in evidence that the Powder Company was indebted to plaintiff bank from twelve to fourteen thousand dollars, evidenced by notes; that the note in suit was one of others put up as collateral for these original notes, and that the notes had been renewed from time to time, partial payments being made on some of them, but that the Powder Company still owed the plaintiff on a note for $5000, another for $3500, one for $1500, and another $4200; that these were renewal notes unpaid, and the note in suit, with others, held as collateral for them, and that when renewed the notes had been marked "Paid," and new notes issued for them, but that the indebtedness itself had never been paid and there was still due the bank from twelve to fourteen thousand dollars from the Powder Company; that the plaintiff bank had taken this note as collateral for this indebtedness and still held it and had sued on it, it being part of the agreement between the Powder Company and the bank, that if the bank was obliged to bring suit to enforce payment of the collaterals they were to credit the amount realized on the collaterals as costs of collection, including attorneys' fees.

On the part of plaintiff in rebuttal two witnesses testified that they were extensive dealers and handlers of live stock and had bought this powder before the defendant had the sale of it, and knew of many others who had done the same and that it had been used by them with benefit to their stock.

This is substantially the testimony in the case, apart from the notes that were exhibited, and a partial statement from the bank as to the condition of its account with the Powder Company. At the close of defendant's testimony and again at the close of all the testimony, plaintiff demurred and asked an instructed verdict— both refused.

By an instruction which the court gave at the instance of plaintiff, the court told the jury that the note in suit is not void for failure of the Pioneer Stock Powder Company to obtain a license from the State to do business in the State as a foreign corporation, for the reason that the laws of this State do not require it to obtain a license to transact business *in the manner its business is transacted in Missouri, as shown by the evidence.* (The part we have italicized being added by the court.)

## OPINION.

REYNOLDS, P. J. (after stating the facts as above).—While the defendant has not appealed, his learned counsel argue that this instruction was wrong and that the note was void by reason of the failure of the Powder Company to take out a license under the laws of our State. If this is so, then, as an appellate court, we would be bound to hold that plaintiff could not recover on this note. So the Kansas City Court of Appeals held in Ehrhardt v. Robertson Bros., 78 Mo. App. 404, as also in Fay Fruit Co. v. McKinney Bros. & Co., 103 Mo. App. 304, 77 S. W. 160. The authorities sustaining the proposition are so fully compiled in these decisions, that we do not think it necessary to repeat them here. Our Supreme Court, in Chicago Mill &

Lumber Co. v. Sims, 197 Mo. 507, 95 S. W. 344, refers
to the case of Ehrhardt v. Robertson Bros., supra, ap-
provingly, as also to that of Tri-State Amusement Co.
v. Forest Park Highlands Amusement Co., 192 Mo. 404,
90 S. W. 1020, as correctly holding that the contract
entered into in this State by a foreign corporation, with-
out having complied with the laws of this State, was
non-enforceable, overruling the decision of our court
in the same case as reported 101 Mo. App. 569, 74 S.
W. 128.

The question before us, then, is: Is this contract be-
tween the Powder Company and the defendant of such
a character as to render the notes void, the Powder
Company at the time a corporation of the State of
Illinois, not having a license to do business in this
State? We do not think it is.

It is true that that contract purports to constitute
an agency in the defendant to transact business in this
State for the Powder Company, but when we look at
the contract and what was actually done under it, and
inquire as to what the transaction really was, we find
that in point of fact there was an absolute sale of
articles, stock powder, etc., by the Powder Company to
defendant, and as evidence of the amount, in part, due
on the purchase, this note was given by the defendant
to the Powder Company, the articles sold to be delivered
f. o. b. cars at Bloomington, Illinois, consigned to de-
fendant. So here was an absolute sale of articles then
in Illinois, delivered there to defendant, shipped from
there to this State. That was of interstate commerce.
To carry it on, no license is required by our law. That
has been very fully determined by the Supreme Court
of our State in International Text Book Co. v. Gil-
lespie, 229 Mo. 397, 129 S. W. 922, and United Shoe
Machinery Co. v. Ramlose, 231 Mo. 545, 132 S. W. 1143;
Wulfing v. Armstrong Cork Co., 250 Mo. 723, 157 S. W.
615, and British-American Portland Cement Co. v.
Citizens Gas Co., 255 Mo. 1, 164 S. W. 468. So the

United States Supreme Court has held in cases cited in the foregoing.

When we come to examine this contract and inquire into what was actually done under it, we find that while it purports to establish an agency in defendant for the Powder Company in Warren County, this State, in point of fact, it was a mere agreement by the Powder Company, that, during the term of the contract, it would not sell its product to anyone else in that county, and that it would sell this product to defendant during the term, at an agreed price. When the defendant received and sold this product, he was selling it as his own; was in no manner whatever accountable to the Powder Company for the proceeds of the sale, limited however, to a minimum price at which he could sell it. That limitation was nugatory. From the time the material was loaded on the cars at Bloomington, Illinois, it was the sole property of the defendant, and the Powder Company had no interest whatever in it, and no right over it, except the right of stoppage in transit. If we had before us the case of the defendant attempting to make sales for the Powder Company, as agent, we would have a very different case. But that is not this case. The case we have is the one between the Powder Company and the defendant, going to the consideration of this note and the consideration of this note was this powder or material, which was the subject of interstate commerce, and came into this State with all the attributes and privileges and rights pertaining to an interstate shipment.

It follows, therefore, that this note was not void but was executed on a good and valid consideration and for a lawful purpose; the purchase by a citizen of Missouri of articles then in the State of Illinois, to be shipped from that State to him in this State. The transaction here comes very close to that before the court in Wulfing v. Armstrong Cork Co., supra. This note was not void, as given for a transaction prohibited by the laws of our State. It required no license to do

this business in this State, and so the learned trial judge very correctly instructed the jury in the case at bar.

The question then recurs, has defendant brought home to plaintiff a knowledge of such fact amounting to fraud in connection with the procuring of these notes and of this contract?

We have set out the testimony substantially as given on this matter by the defendant and his witnesses, and we are compelled to hold, on consideration of it, that while it probably presented evidence of fraud sufficient to take this issue of misrepresentation or fraud' in connection with the procuring of the note and the contract, to the jury, if this was a case between the original parties to the note, it should not have been submitted to them on the evidence produced by defendant, as against this plaintiff.

There is not a particle of evidence in the case to bring home to the bank a knowledge of any of these matters, or of the terms of the contract between the defendant and the Powder Company. The very most that can be said about that is, that defendant introduced evidence tending to prove that the bank, plaintiff here, knew that the Powder Company took these notes on account of sales of its products, but that is far from charging the plaintiff bank with knowledge of the terms of those contracts, or that there was any fraud, misrepresentation or failure of consideration in connection with the note. Even if plaintiff bank may have had its suspicion as to the character of the Powder Company's mode of business, that is not sufficient to charge the bank with notice. [Leavitt v. Taylor, 163 Mo. 158, l. c. 170, 63 S. W. 385; Link v. Jackson, 164 Mo. App. 195, l. c. 202, 147 S. W. 1114.] Furthermore, not only is the testimony on the part of plaintiff clear that the bank (plaintiff) acquired this note before maturity, but the answer admits this, and clear that the bank took it as collateral security to notes it then held, the debt evi-

denced by which notes had not yet been paid and is in excess of this collateral.

Failure of consideration is no defense to a note in the hands of a holder for value before maturity. See section 99,990, Revised Statutes 1909, part of our negotiable instrument law.

Section 10,022, of that law provides:

"A holder in due course is a holder who has taken the instrument under the following conditions: (1) That it is complete and regular upon its face; (2) that he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact; (3) that he took it in good faith and for value; (4) that at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

Section 10,024 provides:

"Where the transferee receives notice of any infirmity in the instrument or defect in the title of the person negotiating the same before he has paid the full amount agreed to be paid therefor, he will be deemed a holder in due course only to the extent of the amount therefor paid by him."

Section 10,025 provides:

"The title of a person who negotiates an instrument is defective within the meaning of this chapter when he obtained the instrument, or any signature thereto, by fraud, duress, or force and fear, or other unlawful means, or for an illegal consideration, or when he negotiates it in breach of faith, or under such circumstances as amount to a fraud."

Section 10,026 provides:

"To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

These sections of our law are conclusive against the defense here attempted.

As before said, there is not a particle of testimony in this case to show that the plaintiff bank had any knowledge of any infirmity or defect in this instrument, or of any such facts that its action in taking the instrument amounted to bad faith.   There was no substantial evidence that the bank took these notes in to aid the Powder Company in defrauding defendant, as charged.   At the very most, all that the defendant attempted to prove, that from the dealings of the bank with the Powder Company, and of the latter with defendant or its customers, and from the provision that the Powder Company was to pay the cost of collection on collaterals the plaintiff bank should have been put on guard and should have suspected that there was something wrong with this note.   That is not the law and cannot sustain this defense.   As we have seen, mere suspicion is not knowledge.   Very much the same state of affairs occurred, as far as this transaction is involved, in McLean County Bank v. Brown, 187 S. W. 785, a case not to be officially reported.

Our conclusion is that the judgment in this case should be reversed and the cause remanded, with directions to the trial court to ascertain the amount due on the note, with interest, and having done that, enter up judgment for the amount as found in favor of the plaintiff and against defendant, with costs, and it is so ordered.

*Allen* and *Becker, JJ*, concur.

_Note_:  Certiorari issued in the above cause by the Supreme Court, on hearing, was quashed, December 1, 1919. See 216 S. W. Rep. 773.